UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER WILLIAMS,<br>    Plaintiff,<br><br>        v.<br><br>ANGEL QUIROS et al.,<br>    Defendants. | No. 3:22-cv-01367 (SRU) |

### INTIAL REVIEW ORDER

Christopher Williams ("Williams") is a sentenced state prisoner currently in the custody of the Connecticut Department of Correction ("DOC") at Osborn Correctional Institution ("Osborn").[1] In October 2022, Williams, proceeding *pro se*, filed this civil rights complaint under 42 U.S.C. § 1983 against the following DOC employees: commissioner, Angel Quiros ("Quiros"); deputy commissioners, Sharonda Carlos ("Carlos") and William Mulligan ("Mulligan"); district administrator, Nick Rodriguez ("Rodriguez"); Osborn warden, Jesus Guadarrama ("Guadarrama"); Osborn maintenance supervisors, Pelczar and Bell; and Osborn captain, Luis Perez ("Perez") (collectively, the "defendants"). Compl., Doc. No. 1. In essence, Williams alleges that, during his term of imprisonment, the defendants exposed him to—and concealed the existence of— unhealthy and hazardous conditions at Osborn, in violation of his rights under the Constitutions of the United States (specifically, the Eighth and Fourteenth Amendments) and the State of Connecticut (specifically, Article First, § 10). For those alleged violations, Williams seeks both monetary and equitable relief. *Id*. at 14–15.

---

[1]   The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler,* 694 F.3d 161, 164 (2d Cir. 2012). The publicly available information on the DOC website shows that Williams was admitted on October 5, 1990 to the Department of Correction ("DOC") and was sentenced on February 28, 1992 to a term of incarceration that has not yet expired. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=132365.

After initial review, I will permit Williams to proceed on his Eighth Amendment claims against Mulligan and Guadarrama based on their alleged deliberate indifference to Williams's risk of harm from the presence of Legionella bacteria in the water supply wells. I will also sever Williams's Eighth Amendment claim against Guadarrama arising from water contaminated with high levels of arsenic, and I will consolidate that claim in the pending class action, *Toliver, et al. v. Semple, et al.*, No. 3:16-cv-01899 (SRU).

I.      FACTUAL BACKGROUND

Williams alleges that Legionella bacterium (found in soil and water) can cause Legionnaires' disease (a serious pneumonia lung infection) and Pontiac fever (a milder flu-like illness that goes away in two to five days without treatment). Compl., Doc. No. 1, at ¶¶ 2–4. Symptoms of Legionnaires' disease include, *inter alia*, headaches, muscle aches, fever, cough, gastrointestinal symptoms, and confusion. *Id.* at ¶ 5. Legionnaires' disease can also adversely affect other parts of the body, including the heart. *Id.* at ¶ 6. Legionnaires' disease can be cured with antibiotics, but some people continue to experience problems after treatment. *Id.* at ¶ 4. If untreated, Legionnaires' disease can be fatal. *Id.*

Prior to June 2021, Williams experienced fevers, headaches, muscle aches, and intestinal pain. *Id.* at ¶ 38. Medical staff evaluated him but did not test him for Legionnaires' disease or Pontiac fever. *Id.* He was provided with medication. *Id.* The symptoms went away but have returned periodically. *Id.*

In June 2021, the defendants informed Osborn staff that an inmate contracted Legionnaires' disease at Osborn. *Id.* at ¶¶ 2–4, 19, 38. The defendants did not inform the inmate population about this case of Legionnaires' disease despite their knowledge that the disease could be contracted by other inmates. *Id.* at ¶ 21.

In July 2021, the defendants were aware that a second inmate was diagnosed with Legionnaires' disease but again failed to inform the inmate population. *Id.* at ¶¶ 22–23.

By September 2021, the defendants had still failed to inform the Osborn inmate population about the presence of Legionnaires' disease at Osborn, although staff had been alerted through roll call memos. *Id.* at ¶¶ 24–25.

On October 12, 2021, Perez issued an inmate memo stating that inmates in the H-Block would be moved to the B-Block, but this memo failed to mention Legionnaires' disease. *Id.* at ¶ 26.

Two days later, on October 14, 2021, Mulligan released an inmate notice informing H-Block inmates that they were being temporarily reassigned to the B-Block because two inmates contracted Legionnaires' disease, and that a contractor would implement the Department of Public Health ("DPH") remediation protocols implemented by the Centers for Disease Control and Prevention ("CDC"). *Id.* at ¶ 27.

The defendants were aware of the source of the Legionella contamination but failed to inform the inmate population. *Id.* at ¶ 28.

In November and December 2021, Pelczar and his maintenance staff installed water filters in the B-Block shower pipes. *Id.* at ¶ 29. Pelczar indicated that a filter would not be provided for inmate cell sinks. *Id.* Williams asked Pelczar if the water was contaminated with Legionella bacteria. *Id.* Pelczar explained that he could not provide information about why filters were being added to the showers due to safety and security reasons. *Id.* at ¶ 30.

Bell is assigned to the task of monitoring the water quality of Osborn's water supply. *Id.* at ¶ 31. During September and October 2021, Bell and a DOC contractor collected water samples from cells and parts of the housing unit in H-Block. *Id.* at ¶¶ 33–34. But the

3

defendants refused to make public the water test results on the basis of a security concern. *Id.* at ¶ 35.

In November 2021, Guadarrama moved entire housing units to the gymnasium for temporary housing due to the contaminated water within Osborn. *Id.* at ¶ 36. At that time, the defendants did disclose the specific contaminants in the drinking supply. *Id.* at ¶ 37.

Once Williams became aware that Osborn inmates had contracted Legionnaires' disease, he wrote to the medical unit to explain that he had been housed in H-Block for several years and experienced fevers, headaches, muscle aches and intestinal pains. *Id.* at ¶ 39. Williams was then called for testing, but it was days after the incubation period for Pontiac fever had lapsed. *Id.* at ¶¶ 39–40. At that time, Williams tested negative for the Legionnaires' disease. *Id.*

In June 2022, Williams requested to be tested again but the nurse refused to provide him with testing. *Id.* at ¶ 40.

Williams also claims that the Osborn water has high levels of arsenic above the Environmental Protection Agency ("EPA") standards, but the inmates were not notified about this condition. *Id.* at ¶ 44. Williams alleges that Osborn staff members are, however, prohibited from drinking, cooking or bathing with Osborn water. *Id.* at ¶ 52. He claims that arsenic ingestion can result in a cumulative poisoning of an individual, *id.* at ¶¶ 42–44, and long-term arsenic exposure can cause an enlarged prostate, skin rashes, white pigmentation spots, neuropathy, and cancer. *Id.* at ¶¶ 54, 61–63.

Williams has suffered from dark pigmentation on his back that cannot be explained by medical staff. *Id.* at ¶ 57. Despite his written request for testing, Williams has has not yet been tested for arsenic exposure. *Id.* at ¶ 56.

The defendants have moved inmates from block to block because their housing units have water that is testing positive to the presence of Legionella and arsenic. *Id.* at ¶ 59. Williams claims that all of the housing units are exposed to the same contaminants because they all draw water from the same source. *Id.* at ¶ 60. Only two wells on the Osborn property provide the facility with water.[2] *Id.* at ¶¶ 31–32.

Williams claims that the defendants created a nuisance based on the contaminated water at Osborn. *Id.* at ¶ 49. He asserts that the defendants knew but disregarded the risk that arsenic poisoning posed to the incarcerated population. *Id.* at ¶¶ 45, 58. Further, he asserts that the defendants did nothing to mitigate Williams's exposure to arsenic because no bottled water or water filters were provided. *Id.* at ¶¶ 46, 58. Per Williams, the defendants are not acting to fix the water contamination problem by connecting the facility to the municipal water source. *Id.* at ¶ 60.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The

---

[2] Williams alleges that Osborn Correctional Institution ("Osborn") has had issues with water contamination since the 1990s when wells in the areas became contaminated due to chemicals from a dry-cleaning operation located on the Osborn property. *Id.* at ¶ 51. Further, Williams alleges that local residents that shared this water supply with Osborn had to use the municipal water supply. *Id.* He claims Osborn switched to wells that met health standards according to DOC. *Id.* at ¶ 52.

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### III. DISCUSSION

#### A. Fourteenth Amendment Claims

I begin by analyzing Williams's Fourteenth Amendment substantive due process claim. Separate from his Eighth Amendment claims, Williams also alleges that the defendants deprived him of basic human needs and exposed him to hazardous and unhealthy conditions during his confinement in violation of his Fourteenth Amendment rights.

The Supreme Court has instructed that, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (cleaned up); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (explaining that, "if a constitutional claim is covered by a specific constitutional provision, such as the … Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"). As such, district courts often decline to consider an inmate's claim related to the conditions of their confinement pursuant to the substantive due process provision of the Fourteenth Amendment and instead consider the claim

pursuant to the Eighth Amendment. *Santana v. Quiros*, 2022 WL 16706959, at *10 (D. Conn. Nov. 4, 2022) (collecting cases).

Considering those principles, Williams's claims of cruel and unusual punishment must be analyzed under Eighth Amendment standards as applied to the states through the Fourteenth Amendment. And to the extent that Williams seeks to add a Fourteenth Amendment substantive due process claim, that claim is **dismissed** because it will be adequately covered by Williams's Eighth Amendment claims. *See Kaminski v. Oniyuke*, 2019 WL 1877075, at *4 (D. Conn. Apr. 26, 2019) (holding that, on initial screening of the complaint, "if [the plaintiff's] substantive due process claim is based on the same action(s) that gave rise to his Eighth Amendment claim for deliberate indifference to medical needs, then his due process claim will be dismissed").

B.      Eighth Amendment Claims: Individual Capacity

Liberally construed, Williams alleges that the defendants were deliberately indifferent to his risk of harm from exposure to the contaminated water at Osborn, in violation of the Eighth Amendment.

The Eighth Amendment prohibits cruel and unusual punishment. *Moore v. Texas*, 581 U.S. 1, 12 (2017). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (cleaned up).

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a

condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need [ ]" or posed "a substantial risk of serious harm" to his health or safety. *Id.* at 834; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the officials knew that the prisoner faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that the defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

        *1.*        *Contamination from Legionella Bacteria*

The first basis for Williams's deliberate indifference claims arises from the alleged presence of Legionella bacteria in Osborn's water supply wells. Courts have held that subjecting inmates to unsafe or unhealthy drinking and bathing water constitutes a sufficiently "serious" risk that would satisfy the objective element of an Eighth Amendment cause of action. *See, e.g., Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery."); *see also Rivera v. Bloomberg*, 2012 WL 3655830, at *4 (S.D.N.Y. Aug. 27, 2012) (noting that, "[c]ourts in this Circuit have held that the Eighth Amendment requires that '[w]ater that is suitable for drinking and bathing' be supplied to inmates.").

Applied here, Williams has satisfied the objective prong. He alleges facts indicating that Legionella bacteria was present in his housing unit and that he has experienced reoccurring symptoms that are potentially indicative of Legionnaires' disease. *See* Compl., Doc. No. 1, at ¶¶ 38–39. Although Williams's harm from the exposure is not entirely clear, an inmate need not

8

wait until he suffers serious harm to challenge dangerous conditions of confinement. *See Toliver v. Comm'r Semple*, 2016 WL 7115942, at *2 (D. Conn. Dec. 6, 2016). Thus, for purposes of initial review only, I assume that Williams has plausibly alleged the objective element because the alleged contaminated water at Osborn exposed him to a serious risk of substantial harm.

As for the subjective element, Williams's conclusory assertion that "the defendants had knowledge of the source of Legionella contamination" is not alone sufficient to establish a claim of Eighth Amendment deliberate indifference. *See* Compl., Doc. No. 1, at ¶ 28. To satisfy the subjective element, Williams must plead facts to reflect that a defendant was aware of, but disregarded, the substantial risk of serious harm to his health and safety. *See Tangreti v. Bachmann*, 983 F.3d 609, 618–19 (2d Cir. 2020). Therefore, I analyze the defendants in turn.

### a) *Quiros, Carlos, and Rodriguez*

Beginning with Quiros, Carlos, and Rodriguez, Williams does not include in the body of his complaint any specific facts to describe conduct by those defendants. As a result, Williams has failed to allege that any of those individuals were aware of, but acted with a conscious disregard to, any serious risk of substantial harm to Williams's health or safety. *See Hunter v. Quiros*, 2023 WL 348111, at *3 (D. Conn. Jan. 20, 2023) (dismissing Eighth Amendment claims absent facts showing a subjective knowledge of the risk faced by the plaintiff). Accordingly, Williams's Eighth Amendment claims arising from water contaminated with Legionella bacteria will be dismissed with respect to Quiros, Carlos, and Rodriguez. *See* 28 U.S.C. § 1915A(b)(1).

### b) *Mulligan and Guadarrama*

Next, Williams alleges that Mulligan released an inmate notice on October 14, 2021. Compl., Doc. No. 1, at ¶ 27. That notice informed the H-Block inmates that they were being transferred to the B-Block housing unit so that DPH remediation protocols could be implemented

9

after two inmates were found to have contracted Legionnaires' disease. *Id.* He also alleges that Guadarrama moved entire housing units to the gymnasium for temporary housing due to the contaminated water. *Id.* at ¶ 36.

For purposes of initial review, I conclude that Williams has plausibly alleged that Mulligan and Guadarrama were aware of the presence of the Legionella bacteria in the water. Williams's allegations indicate that Guadarrama and Mulligan failed to take remedial measures for the Legionella contamination until October 2021, despite an inmate contacting Legionnaires' disease in June 2021. *See id.* at ¶ 27. At this early stage in the proceedings, those allegations are sufficient to permit Williams to proceed on his Eighth Amendment claims for damages against Guadarrama and Mulligan based on their delay in providing remedial measures to protect Williams from Legionella exposure.

Williams also appears to claim that the DPH remediation protocol was not sufficient to alleviate his risk of exposure to Legionella bacteria because the same water supply applied to all housing units at Osborn. *See id.* at ¶ 60. This assertion appears, however, based on his own contention about the sources of the water supply at Osborn, which is insufficient to support a constitutional claim. *See, e.g., Dinh v. Boisvert*, 2023 WL 122044, at *4 (D. Conn. Jan. 6, 2023) (noting that, allegations based on a plaintiff's conjecture is insufficient to state a constitutional claim). No facts suggest that Williams's risk of harm from Legionella bacteria was not remedied by implementation of the DPH remediation protocol for his housing unit. Thus, to the extent Williams asserts deliberate indifference based on a failure by Mulligan and Guadarrama to implement measures in addition to the DPH remediation protocol, I will dismiss this Eighth Amendment claim as not plausible.

        c)       *Pelczar, Bell, and Perez*

Lastly, Williams alleges that Pelczar, Bell, and Perez acted with deliberate indifference to his risk of exposure to Legionella bacteria by either (or both) not providing him with specific information about the water contamination or not implementing additional remedial measures. Specifically, Williams alleges that Pelczar was involved with installation of filters in the B-Block showers, stated that no filters were being added to cell sinks, and provided only a limited explanation for safety and security reasons that filters were being added to the showers. Compl., Doc. No. 1, at ¶¶ 29–30. Williams alleges that Bell collected water samples from the H-Block housing unit but refused to make the results public on the basis of a security concern. *Id.* at ¶¶ 33–34. As for Perez, Williams alleges only that he issued an inmate memo informing the H-Block inmates that they would be moving to B-Block without providing any information about the inmates who had been diagnosed with Legionnaires' disease. *Id.* at ¶ 26.

None of those allegations, however, raise an inference that those defendants acted with subjective awareness that their conduct exposed Williams to a risk of harm. *See Salahuddin*, 467 F.3d at 281. Williams's allegations do not suggest that any of those defendants were authorized to provide inmates with information about water contamination at Osborn or to implement additional remedial measures for the water contamination but failed to do so. Thus, his allegations do not suggest that any of those defendants acted with a culpable state of mind. *See id.* ("Even if objectively unreasonable, a defendant's mental state may be nonculpable."); *Warwick v. Doe*, 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (explaining that absent facts suggesting that the defendant actually had and failed to exercise the power to get plaintiff in to see a dental surgeon sooner, the plaintiff's allegations amounted to negligence). Accordingly, I will dismiss Williams's Eighth Amendment claims arising from Legionella water contamination asserted against Pelczar, Bell, and Perez.

>    2.    *Arsenic-Related Claims*

As an initial matter, I note that Williams's claim of deliberate indifference to the arsenic water contamination is substantially similar to the water contamination claim based on elevated levels of arsenic in the Osborn water asserted in the pending class action, *Toliver, et al. v. Semple, et al.*, No. 3:16-cv-01899 (SRU), Second Am. Compl., Doc. No. 114, at ¶¶ 75, 88, 125. Indeed, Williams appears to be a member of *Toliver*'s certified "Contaminated Water Class comprised of all current and former inmates of Osborn who, from November 19, 2013 through the present, have had to drink and shower in tap water from one or more of the onsite wells at Osborn, whether or not such current or former inmates were housed in Q Buildings." *Toliver v. Semple*, 2019 WL 4686587, at *6 (D. Conn. Sept. 26, 2019).

I construe Williams's allegations most broadly as raising an inference that Guadarrama has failed to remedy known high levels of arsenic in the Osborn water that Williams must drink and bathe in on daily, continuing basis. As previously discussed, Williams does not mention Quiros, Carlos, or Rodriguez in the body of the complaint. The facts alleged about Mulligan, Perez, and Pelzcar appear related only to the Legionella water contamination. In addition, Williams has not alleged facts to show that Bell, who allegedly tested the water in Williams's housing block, acted with culpable recklessness to Williams's risk of harm to arsenic exposure. Thus, I conclude that Williams has stated a plausible Eighth Amendment claim of deliberate indifference against only Guadarrama.

In the interests of justice and economy, I will sever the Eighth Amendment claim from this action for consolidation with *Toliver*. *See* Fed. R. Civ. P. 42(a) (providing for consolidation of actions involving common questions of law or fact). Williams's arsenic and Legionella water claims in this action are not factually related. Each claim will require a separate proof about how

the water was contaminated, Williams's level of exposure and risk of harm, and the defendants' failure to mitigate the risk of harm to Williams. In fact, I denied the *Toliver* plaintiffs' request to add allegations about an outbreak of Legionnaire's disease because those new allegations were not sufficiently related to the existing claims, including arsenic water contamination, proceeding in the operative *Toliver* complaint. *Toliver*, 3:16-cv-01899 (SRU), Order, Doc. No. 229.

Whether to consolidate pending actions is a question within the discretion of the court. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 269 (S.D.N.Y. 2015). In exercising its discretion, a court should consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) (cleaned up).

Here, the considerations of justice and judicial economy favor consolidation of the claims: (1) Williams is already a member of the *Toliver* contaminated water class; (2) his claim is substantially similar to the claims in *Toliver*;[3] (3) Williams's claim would require essentially the same discovery about arsenic levels at Osborn as that required for *Toliver;* and (4) consolidation will prevent inconsistent adjudications on common questions of law and fact.

---

[3] Williams requests both monetary, declaratory, and injunctive relief. *See* Compl, Doc. No. 1, at p. 14 (¶¶ A(2), B(1))(requesting declaratory judgment of Eighth Amendment and provisions for bottled water). The *Toliver* action seeks monetary, declaratory, and injunctive relief that, if granted, would cover the requests made by Williams. *Toliver*, 3:16-cv-1899 (SRU), Second Amended Compl., Doc. No. 114, at p. 41 (¶¶ b-e) (requesting declaratory judgment of Eighth Amendment violation and requesting provisions for bottled water, remediation of well water on permanent basis, and medical relief); p. 42 (¶¶ j-k) (requesting damages). In addition, "the fact that two actions do not contain entirely overlapping defendants does not necessarily mean that they should not be consolidated." *Francis v. Meachum*, 2020 WL 6136290, at *7 (D. Conn. Oct. 19, 2020).

Thus, I will consolidate Williams's arsenic-related water claims alleged against Guadarrama in his individual and official capacities into the *Toliver* action.

### C. Eighth Amendment Claims: Official Capacity

In addition to Williams's request for damages, he also seeks injunctive and declaratory relief. Additionally, Williams has filed a motion for temporary restraining order and preliminary injunction. Mot. for TRO and Prelim. Inj., Doc. No. 9. Because Williams's arsenic-related claims are severed, I consider only whether Williams may proceed with any official capacity claims to remedy any deliberate indifference to his exposure to water contaminated with Legionella bacteria.

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). Importantly, the exception to Eleventh Amendment immunity, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

As alleged, the only plausible Eighth Amendment claims are based on a constitutional violation that occurred in the past; that is, the delayed response by Mulligan and Guadarrama to mitigate the risk of harm to Williams from Legionella bacteria. There is no indication that Williams is *still* being subjected to an ongoing constitutional violation as it relates to the

Legionella bacteria claim. Consequently, Williams cannot proceed against any defendant in his official capacity for declaratory or injunctive relief. *See Henderson v. Quiros*, 2021 WL 5359739, at *8 (D. Conn. Nov. 17, 2021) (dismissing official capacity claims absent any continuing or ongoing federal or constitutional violation). Because Williams's allegations do not support any official capacity claims, his requests for injunctive and declaratory relief must be **dismissed** and his motion for a temporary restraining order and preliminary injunction must be **denied** without prejudice.

        D.      State Constitutional Claim

In addition to his federal claims, Williams also a claim under Article first, section 10 of the Connecticut Constitution. Article first, section 10 of the Connecticut Constitution, provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Conn. Const, art. 1, § 10. The Connecticut Supreme Court has not recognized a private right of action under Article first, section 10. Because no substantive rights are created by that clause, there is no legal basis for a claim under that section. *See Baltas v. Dones*, 2022 WL 1239989, at *21 (D. Conn. Apr. 27, 2022) (noting that courts have declined to recognize a private right of action for Article first, section one, four, eight, fourteen, and twenty); *Sentementes v. General Elec. Co.,* 2014 WL 2881441, at *10 (D. Conn. June 25, 2014) (dismissing claim that defendants violated "Article I, section 10 of the Connecticut state constitution . . . [because] Connecticut courts do not recognize a private right of action under that clause"); *see also Kunda v. Kohl's Dep't Stores, Inc.*, 2019 WL 7816625, at *5 (Conn. Super. Ct. Dec. 30, 2019) (no recognized private right of action under Article first, section 10). Accordingly, Williams's state constitutional law claim is **dismissed**.

IV.     **CONCLUSION**

For the foregoing reasons, the Court enters the following orders:

(1) The case shall proceed on Williams's Eighth Amendment individual capacity claims for damages against Mulligan and Guadarrama based on their delayed response to mitigate Williams's risk of harm from the alleged presence of Legionella bacteria in the Osborn water supply wells. All other constitutional claims based on water contaminated with Legionella bacteria are **DISMISSED** under 28 U.S.C. § 1915A(b).

(2) Williams's Eighth Amendment individual and official capacity claims based on his alleged exposure to water contaminated with high levels of arsenic against Guadarrama are SEVERED from this action. Fed. R Civ. P. 21. This claim is **DISMISSED** without prejudice from this action for consolidation with *Toliver* v. *Semple*, 3:16-cv-01899 (SRU). The Clerk is instructed to add Williams as a consolidated plaintiff and Guadarrama as a consolidated defendant in his individual and official capacities to the *Toliver* action. Any Fourteenth Amendment claims of deliberate indifference are also SEVERED from this action under Rule 21 and **DISMISSED** without prejudice.

(3) Williams's state constitutional law claim is **DISMISSED** without prejudice.

(4) Defendants Quiros, Carlos, Rodriguez, Pelczar, Bell, and Perez are **DISMISSED** from this action. The Clerk is directed to terminate those defendants.

(5) All official capacity claims arising from contamination of Osborn water with Legionella bacteria are **DISMISSED**. Thus, Williams's motion for temporary restraining order and preliminary injunction, doc. no. 9, is **DENIED** without prejudice.

(6) Williams may file, within thirty days of this order, an amended complaint to correct the deficiencies of his Eighth Amendment claims arising from contamination of Osborn water

with Legionella bacteria. He is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference. He must name in the case caption all defendants against whom he asserts claims.

(7) As he is not proceeding *in forma pauperis*, Williams is responsible for serving the complaint on Mulligan and Guadarrama in their individual capacities within 90 days of this order. Failure to effect service on the defendants within the time specified may result in the dismissal of this action.

The Clerk is directed to send Williams instructions for service of the complaint on Mulligan and Guadarrama in their individual capacities, together with two copies of the complaint, two copies of this order, two blank Notice of Lawsuit forms, and two blank Waiver of Service of Summons forms.

(8) Williams shall effect service of the complaint on Mulligan and Guadarrama in their individual capacities by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the complaint, and a copy of this order to each defendant at his current work address (e.g. the facility where the defendants currently work).

**Williams shall file a notice with the Clerk indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to Mulligan and Guadarrama in their individual capacities. He shall also file the signed Waivers of Service of Summons form that he receives from Mulligan and Guadarrama in their individual capacities with the Clerk.**

(9) The clerk shall mail a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(10) Mulligan and Guadarrama shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, the defendants shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(11) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(12) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(13) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(14) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(15) If Williams changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Williams must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Williams has more than

one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

      (16) Williams shall utilize the Prisoner Efiling Program when filing documents with the Court. Williams is advised that the Program may be used only to file documents with the Court. Local court rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

      It is so ordered.

Dated at Bridgeport, Connecticut this 19th day of July 2023.

                                                  /s/ STEFAN R. UNDERHILL
                                                  Stefan R. Underhill
                                                  United States District Judge